UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FLOYD BEAMON,

        Petitioner,

v.                                                    Case No. 3:20-cv-1118-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

## I. Status

Petitioner Floyd Beamon, an inmate of the Florida penal system, initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Beamon challenges a 2009 state court (Duval County, Florida) judgment of conviction for second-degree murder with a firearm. He raises eight grounds for relief. See Petition at 12-25. Respondents submitted a Response to the Petition (Response; Doc. 8). They also submitted exhibits. See Docs. 8-1 through 8-2. Beamon declined to file a brief in reply. See Doc. 12. This action is ripe for review.

_____

[1] For all pleadings and exhibits filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

## II. Relevant Procedural History

On August 28, 2007, the State of Florida (State) charged Beamon by information with the second-degree murder of his brother, Swindell Beamon, with a firearm. See Doc. 8-1 at 42. At the conclusion of a trial, a jury found Beamon guilty of the charged offense. Id. at 218-19. On December 18, 2009, the trial court sentenced Beamon to a term of life imprisonment, with a minimum mandatory term of twenty-five years. Id. at 223-28.

Beamon pursued a direct appeal raising five arguments: (1) the trial court erred in denying his motion in limine to exclude evidence that he allegedly "swerved his car towards [the victim] shortly before killing him";[2] (2) the trial court failed to conduct a proper Richardson[3] inquiry upon learning of a discovery violation; (3) the trial court erred in denying his motion for a mistrial based on the discovery violation; (4) the trial court erred in overruling his objection to impermissible hearsay testimony that the State elicited during Officer Mark Muchowicz's trial testimony; and (5) the prosecutor's remarks during opening and closing arguments constituted fundamental error. Id. at 724-78. The First District Court of Appeal (First DCA) per curiam affirmed Beamon's conviction and sentence on May 12, 2011, id. at 859, and issued the mandate on May 31, 2011, id. at 862.

---

[2] See Doc. 8-1 at 743.
[3] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

On July 6, 2011, Beamon filed a pro se motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800. <u>See</u> Doc. 8-2 at 176-77. Beamon filed a second Rule 3.800 motion on July 27, 2011. <u>Id.</u> at 179. The trial court denied both motions. <u>Id.</u> at 179-80.

On April 4, 2012, Beamon filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). <u>See</u> Doc. 8-1 at 867-87. On September 28, 2017, the postconviction court granted Beamon leave to amend his postconviction motion after finding all ten claims for relief in the Rule 3.850 Motion were "insufficiently pled and . . . therefore legally insufficient." <u>Id.</u> at 892-900. On November 30, 2017, Beamon filed an amended Rule 3.850 Motion in which he argued his trial counsel was ineffective when she failed to: (1) investigate and raise a claim of self-defense; (2) subpoena witnesses on Beamon's behalf; (3) object to Rashawn Roberts' trial testimony; (4) object to Frederick Holsey's trial testimony; (5) object to Katie Whitehurst's testimony; (6) object to Officer Muchowicz's testimony; (7) prepare Beamon for trial; (8) file a motion to suppress all of the witnesses' testimony; (9) impeach witnesses Roberts and Holsey; and (10) investigate the victim's background. <u>Id.</u> at 902-25. On January 9, 2018, the postconviction court denied relief. <u>Id.</u> at 950-65. The First DCA per curiam affirmed the denial of relief on May 8, 2019, and issued the mandate on September 27, 2019. <u>See</u> Doc. 8-2 at 131, 144.

On February 21, 2020, Beamon filed a Rule 3.800 motion to correct illegal sentence. <u>See</u> Doc. 8-2 at 191-208. Beamon filed another Rule 3.850 motion on April 24, 2020, which the postconviction court denied as untimely, impermissibly successive, and frivolous on June 23, 2020. <u>Id.</u> at 210. Beamon filed the instant action under 28 U.S.C. § 2254 on September 28, 2020. <u>See</u> Doc. 1.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period set forth in 28 U.S.C. § 2244.

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before

the Court. Because the Court can "adequately assess [Beamon's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>abrogation recognized on other grounds by</u> <u>Smith v. Comm'r, Ala. Dep't of Corr.</u>, 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (internal quotation marks omitted) (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u>

<u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v.</u>

6

Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest

court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-18, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

> innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
> (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (first citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); and then <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that

counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

13

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation
> is a most deferential one." Richter, 562 U.S. at ---,
> 131 S. Ct. at 788. But "[e]stablishing that a state
> court's application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are
> both highly deferential, and when the two apply in
> tandem, review is doubly so." Id. (citations and
> quotation marks omitted). "The question is not
> whether a federal court believes the state court's
> determination under the Strickland standard was
> incorrect but whether that determination was
> unreasonable — a substantially higher threshold."
> Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument that
> counsel satisfied Strickland's deferential standard,"
> then a federal court may not disturb a state-court
> decision denying the claim. Richter, 562 U.S. at ---,
> 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference — this one to a state court's decision — when we

are considering whether to grant federal habeas relief from a state court's

decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v.

Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

As Ground One, Beamon argues the trial court erred in denying his motion in limine to exclude any evidence "that [he] tried to hit [the victim] with his car shortly before th[e] killing." See Doc. 8-1 at 85, 173; Petition at 12. Beamon asserts the improper admission of this evidence violated his Fourteenth Amendment rights. See Petition at 12. Beamon also contends his counsel "prejudiced him" by not filing a motion to exclude Williams Rule evidence.[7] Id. In the Response, Respondents treat the latter argument as an ineffective assistance of counsel claim. See Response at 7-10, 31-36.

Insofar as Beamon argues the trial court erred in denying his motion in limine, the record reflects that Beamon raised a substantially similar claim on direct appeal. See Doc. 8-1 at 743-53. The State filed an answer brief, id. at 800-05; Beamon filed a brief in reply, id. at 844-48; and the First DCA per curiam affirmed Beamon's conviction and sentence without a written opinion, id. at 859. Initially, the Court determines that Beamon did not fairly present the federal nature of this claim to the state court. In his briefing on direct appeal, Beamon relied solely on Florida law to argue the trial court erroneously denied the motion in limine. See Doc. 8-1 at 743-53. Beamon did

---

[7] Under the Williams Rule, evidence of collateral crimes is admissible "[i]f found to be relevant for any purpose save that of showing bad character or propensity." Williams v. State, 110 So. 2d 654, 662 (Fla. 1959).

not present any federal constitutional grounds in support of his claim. Therefore, Beamon failed to alert the state court to the federal nature of his claim, and in failing to do so, deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Beamon has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, Beamon's claim that the trial court erred in denying his motion in limine is due to be denied.

Nevertheless, even if Beamon fairly presented a federal claim on direct appeal, he is not entitled to relief. In its appellate brief, the State addressed the claim on the merits, Doc. 8-1 at 800-05; therefore, the appellate court may have affirmed Beamon's conviction based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Beamon is

not entitled to relief on the basis of his claim that the trial court erred in denying his motion in limine.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim lacks merit. The Eleventh Circuit has explained:

> "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence." <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11th Cir. 1983). "However, where a state court's ruling is claimed to have deprived a defendant of his right to due process, a federal court should then inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial." <u>Id.</u> (citations omitted).

<u>Tidwell v. Butler</u>, 415 F. App'x 979, 980 (11th Cir. 2011).[8] Beamon's conclusory argument in Ground One is insufficient to establish that the trial court erred in admitting the evidence at issue in the motion in limine, which was Holsey's testimony that he saw Beamon swerve his car towards the victim as he drove up to the house and parked right before the shooting occurred. <u>See</u> Doc. 8-1 at 427-28, 437. Significantly, Holsey testified that it never appeared to him that Beamon "was trying to hit [the victim] with his car." <u>Id.</u> at 437, 440. Even assuming Holsey's testimony was improperly

---

[8] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

admitted, Beamon has not shown that the error was of such magnitude that it rendered his trial fundamentally unfair. The evidence of guilt was overwhelming. During the trial, Beamon's mother testified that he told her he was going to "stop all these M.F.'s" when he entered the house; when she saw him moments later with the gun and asked him what he was going to do, he replied, "I will kill the M.F." See id. at 445-46. Beamon then left the house and shot the victim in the front yard in the presence of their mother and two other eyewitnesses, Roberts and Holsey. Id. at 404-06, 430-31, 448-49. Roberts testified that after the shooting, he observed Beamon pulling on the victim's clothes as the victim gasped for air, and he also heard Beamon tell the victim that he should have died. Id. at 407. Holsey observed Beamon visibly upset and crying after the shooting, and he testified that Beamon told him "I done messed up." Id. at 433, 439. And Officer Muchowicz testified that he saw Beamon trying to flee the scene when police and emergency responders arrived. Id. at 455-57. In light of the overwhelming evidence of his guilt, Beamon has not demonstrated that the admission of Holsey's testimony regarding the swerving incident deprived Beamon of due process or resulted in a fundamentally unfair trial. Thus, Beamon is not entitled to federal habeas relief on his claim that his motion in limine was erroneously denied.

To the extent Beamon raises an ineffective assistance of counsel claim based on counsel's failure to file a motion to exclude Williams Rule evidence,

Beamon failed to properly exhaust this claim, and the claim is procedurally defaulted. <u>See</u> Response at 9-10. According to Respondents, Beamon did not present this claim on direct appeal or in his amended Rule 3.850 Motion, and he cannot now present it in a Rule 3.850 motion because it would be untimely. <u>Id.</u> Beamon has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, to the extent Beamon asserts an ineffectiveness claim in Ground One, it is due to be denied. Even if the Court were to assume that Beamon exhausted this claim, his ineffectiveness claim would not be meritorious. He has shown neither deficient performance nor resulting prejudice. Accordingly, Beamon is not entitled to federal habeas relief on the claims raised in Ground One.

## B. Grounds Two and Three

As Ground Two, Beamon argues that the trial court failed to conduct a proper <u>Richardson</u>[9] inquiry upon learning of a discovery violation. <u>See</u> Petition at 15. Relatedly, in Ground Three, Beamon contends the trial court erroneously denied his motion for mistrial based on the discovery violation. <u>Id.</u> at 17. In the Petition, Beamon failed to identify the specific trial

---

[9] "A <u>Richardson</u> hearing is a proceeding under Florida law by which a criminal defendant can challenge a discovery violation." <u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 64 F.4th 1264, 1272 (11th Cir. 2023).

testimony at issue in Grounds Two and Three, but the record reflects that he is referring to Officer Muchowicz's testimony regarding a statement Beamon made after he stopped Beamon's vehicle from leaving the scene:

> Q: Was [Beamon] acting a little suspicious to you as well?
>
> A: He was . . . I'm not sure it was the first time or the second time when I told him that he was – I think it was the second time. When I actually drew my weapon and pointed at him and told him forcefully to put the keys on the roof <u>he articulated his frustrations saying you're going to have the whole street blocked and I can't get out and go anywhere or something to that effect</u> and I said you're not going anywhere right now.
>
> Q: Okay. Eventually he puts the keys on the roof?
>
> A: He puts the keys on the roof and when he did step out of the car like I told him to –
>
> Defense counsel: Objection, Your Honor. I apologize. May we approach?
>
> The Court: You may.
>
> (Sidebar discussion with reporter present.)
>
> Defense counsel: Your Honor, clearly a statement that was just elicited from this officer about a statement by Mr. Beamon is a defendant's statement that was never disclosed. It was never brought out during deposition. It was never indicated in any report and it was never disclosed by the state as a statement ever made by Mr. Beamon. Clearly a discovery violation.

> State: Judge, if I could respond. This is the first time
> I have ever heard of that. I was expecting him to be,
> yeah, he was acting a little suspicious and didn't put
> the keys on the top of the roof immediately. I have
> pretrialed him. I never heard him say that before. It's
> the first time I ever heard about it.

Doc. 8-1 at 460-62 (emphasis added). The record reflects that the trial court

granted defense counsel's request to excuse the jury so that counsel could

question Officer Muchowicz further regarding the statement and whether

there were any additional statements that had not been disclosed. Id. at 462-

464. The trial court subsequently denied defense counsel's motion for a

mistrial based on the statement, id. at 465, but issued a curative instruction

striking the statement, id. at 466-67.

    Initially, the Court finds that Beamon did not fairly present the federal

nature of his claims in Grounds Two and Three to the state court. Beamon

raised substantially similar claims on direct appeal. See Doc. 8-1 at 754-66.

The State filed an answer brief addressing both claims, id. at 805-14; Beamon

filed a brief in reply, id. at 848-53; and the First DCA per curiam affirmed

Beamon's conviction and sentence without a written opinion, id. at 859. The

record demonstrates that in his briefing on direct appeal, Beamon relied

solely on Florida law to argue both claims. Id. at 754-66, 848-53. Although he

contends in Grounds Two and Three of his federal Petition that his Sixth and

Fourteenth Amendment rights were violated, see Petition at 15, 17, he did

not identify any federal constitutional provisions or otherwise cite to any federal authority in briefing these claims on direct appeal. Therefore, Beamon failed to alert the state court to the federal nature of the claims, and in failing to do so, deprived the state court of a meaningful opportunity to review the claims. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claims would be futile, the claims are procedurally defaulted. Beamon has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, relief on the claims in Grounds Two and Three is due to be denied.

Nevertheless, even if Beamon had fairly presented the federal nature of these claims in his direct appeal, he is still not entitled to relief. In its appellate brief, the State addressed the claims on the merits, Doc. 8-1 at 805-14; therefore, the appellate court may have affirmed Beamon's conviction based on the State's argument. If the appellate court addressed the merits of the claims, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings. Therefore, Beamon is not entitled to federal habeas relief on the basis of these claims.

Even assuming the appellate court's adjudication of these claims was not entitled to deference, the claims lack merit. The record refutes Beamon's contention that there was a discovery violation. Although neither the attorneys nor Officer Muchowicz recalled this at the time of trial, Officer Muchowicz had in fact previously testified regarding the statement at issue during a pretrial hearing on Beamon's motion to suppress. See Doc. 8-1 at 273 (officer's testimony that Beamon "was very agitated, irritated, saying I'm just trying to leave, man, I'm just trying to drive around you."). Moreover, the record supports the trial court's conclusion that the statement at issue was cumulative of Officer Muchowicz's earlier trial testimony that he observed Beamon attempting to drive around the blockade and leave the scene after the shooting. See id. at 465. Finally, even though the trial court found no basis for granting a mistrial, it nevertheless granted defense counsel's request to strike the testimony and instructed the jury to disregard it. Id. at 465-67; see Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (stating that "jurors are presumed to follow the court's instructions"). Thus, given the record in this action, Beamon has failed to show that he is entitled to federal

habeas relief. Accordingly, relief on the claims raised in Grounds Two[10] and Three is due to be denied.

## C. Ground Four

As Ground Four, Beamon argues that his Fourteenth Amendment rights were violated when the trial court erroneously overruled his hearsay objection to "Officer Muchowicz[] testifying as to what he was told by Officer Deal." <u>See</u> Petition at 20. Beamon raised a substantially similar claim on direct appeal, <u>see</u> Doc. 8-1 at 766-69; the State filed an answer brief, <u>id.</u> at 814-19; Beamon filed a reply brief, <u>id.</u> at 853-56; and the First DCA per curiam affirmed Beamon's conviction and sentence without a written opinion, <u>id.</u> at 859.

As in Grounds One through Three, the Court determines that Beamon also did not fairly present the federal nature of his claim in Ground Four to

---

[10] The Court notes that Respondents also briefed an ineffective assistance of counsel claim in response to Ground Two because Beamon argued as "supporting facts" in Ground Two that his counsel "prejudiced him by failing to conduct a full 'Richardson inquiry hearing[.]'" <u>See</u> Response at 13-14 (citing Petition at 15). From the threadbare allegations in the Petition, it is not readily apparent that Beamon intended to raise an ineffective assistance of counsel claim in Ground Two. To the extent Beamon may have raised such a claim, the Court concludes that Respondents are correct in their contention that the claim is unexhausted because Beamon failed to raise it on direct appeal or in his amended Rule 3.850 Motion. <u>See</u> <u>id.</u> Since future attempts to exhaust the claim would be futile, it is procedurally defaulted. Beamon has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Therefore, to the extent Beamon asserts an ineffectiveness claim in Ground Two, it is due to be denied.

the state court. The record demonstrates that in his briefing on direct appeal, Beamon relied on Florida law in arguing that the trial court erroneously overruled the hearsay objection. Id. at 766-69, 853-56. Further, Beamon applied Florida law in his harmless error analysis of the claim. Id. Beamon did not present any argument under the Fourteenth Amendment in support of the claim in his direct appeal. Therefore, Beamon failed to alert the state court to the federal nature of his claim, and in failing to do so, deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Beamon has not shown either cause excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. As such, relief on the claim in Ground Four is due to be denied.

Nevertheless, even if Beamon fairly presented a federal claim on direct appeal, he is still not entitled to relief. In its appellate brief, the State addressed the claim in Ground Four on the merits, Doc. 8-1 at 814-19; therefore, the appellate court may have affirmed Beamon's conviction based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that

the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Beamon is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Beamon still would not be entitled to federal habeas relief. As stated earlier, "[a]s a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence." Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983). "However, where a state court's ruling is claimed to have deprived a defendant of his right to due process, a federal court should then inquire only to determine whether the error was of such magnitude as to deny fundamental fairness to the criminal trial." Id. (citations omitted). Here, although Beamon failed to identify the alleged hearsay testimony in his Petition, he identified the following testimony in his initial brief on direct appeal:

> After Officer Muchowicz testified that he moved [Beamon] from [Beamon's] vehicle to the back of his own [police] vehicle, the prosecutor asked [Officer Muchowicz] "–and at some point did Officer Deal come up and explain to you that – not to release him because they want to do some more –" At this point defense counsel objected on the basis of hearsay and

> the trial court overruled the objection. [Officer
> Muchowicz] then testified that when he was putting
> the handcuffs on [Beamon,] Officer Deal came
> running up and "<u>said emphatically don't let him go,
> don't let him go</u>."

Doc. 8-1 at 766-67 (emphasis added); <u>see</u> <u>also</u> Doc. 8-1 at 467. Beamon fails to

show that this was improperly admitted hearsay testimony. But even if the

testimony constituted inadmissible hearsay, Beamon has not even suggested

how its admission rendered his trial fundamentally unfair. Thus, Beamon is

not entitled to federal habeas relief on the claim raised in Ground Four.

### D. Ground Five

As Ground Five, Beamon contends his counsel failed to object to the

prosecutor's improper remarks during opening and closing arguments. <u>See</u>

Petition at 21. He asserts that the prosecutor's comments "individually

and/or cumulatively" constituted fundamental error. <u>Id.</u> Beamon raised a

substantially similar claim on direct appeal, <u>see</u> Doc. 8-1 at 769-77; the State

filed an answer brief, <u>id.</u> at 820-35;[11] and the First DCA per curiam affirmed

without a written opinion, <u>id.</u> at 859.

Upon review of the record, the Court again determines that Beamon

did not fairly present the federal nature of this claim to the state court. The

record demonstrates that in his initial brief on direct appeal, Beamon argued

---

[11] Although Beamon filed a reply brief, he did not address this claim. <u>See</u> Doc.
8-1 at 856.

that the prosecutor's remarks constituted fundamental error based upon Florida law. Doc. 8-1 at 769-77. "[T]he fundamental error question is an issue of state law, and state law is what the state courts say it is." Pinkney v. Sec'y, Dept. of Corr., 876 F.3d 1290, 1296 (11th Cir. 2017). Beamon did not present any federal constitutional grounds in support of this claim in his direct appeal. Therefore, to the extent Beamon now raises a federal claim, the Court finds he failed to fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. See Baldwin, 541 U.S. at 29. Since future attempts to exhaust the claim would be futile, the claim is procedurally defaulted. Beamon has alleged neither cause and prejudice nor a miscarriage of justice to overcome his failure to exhaust. As such, the claim is procedurally barred.

Nevertheless, even if Beamon fairly presented a federal claim on direct appeal, he is not entitled to relief. In its appellate brief, the State addressed this claim on the merits, Doc. 8-1 at 820-35; therefore, the appellate court may have affirmed Beamon's conviction based on the State's argument. If the appellate court addressed the merits of the claim, the state court's adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law,

28

and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Beamon is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, the claim is without merit. Attorneys are permitted wide latitude in their opening and closing arguments, and the record reflects that the trial judge instructed the jury that the attorneys' arguments were not evidence. See Doc. 8-1 at 382, 537; see Brown, 255 F.3d at 1280 (stating that "jurors are presumed to follow the court's instructions"). After reviewing the record, viewing the prosecutor's remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011), the Court is not convinced that the remarks at issue likely resulted in a due process violation.[12] As such, Beamon is not entitled to federal habeas relief on the claim raised in Ground Five.

### E. Ground Six

As Ground Six, Beamon argues that his trial counsel was ineffective when she advised him that his proposed witnesses would not help his defense and were "not relevant to [his] case." See Petition at 24. Beamon raised a

---

[12] The reversal of a conviction is warranted only when improper comments by a prosecutor have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted); Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1291 (11th Cir. 2012) (citation omitted).

substantially similar claim in grounds one and two of his amended Rule 3.850

Motion. <u>See</u> Doc. 8-1 at 905-12. The postconviction court denied relief, stating

in pertinent part:

> Neither the evidence presented at trial, nor the evidence Defendant alleges should have been presented, would have provided a legal basis for a self-defense claim. Counsel deposed the State's witnesses as well as the witnesses Defendant requested that she call. Counsel, however, did not believe there was any evidence supporting a claim of self-defense. Defendant's witnesses would have testified as to threats or acts of violence done by the victim toward Defendant and his mother, but counsel did not believe such evidence would be either relevant or admissible absent evidence that the victim had done some specific act warranting the use of deadly force by Defendant immediately prior to the shooting. Counsel was correct:
>
> > It has been recognized that when the defense of self-defense is raised, evidence of the victim's reputation may be admissible to show his propensity for violence and the likelihood that the victim was the aggressor, while evidence of prior specific acts of violence may be admissible to show the reasonableness of the defendant's apprehension at the time of the slaying. But a prerequisite to the introduction of such evidence is the laying of a "proper predicate . . . by the showing of some overt act by the deceased at or about the time of the slaying that reasonably indicated a need for action by the defendant in self-defense."
>
> <u>Quintana v. State</u>, 452 So. 2d 98, 100 (Fla. 1st DCA 1984) (citations and internal quotation marks omitted); <u>accord</u> <u>Savage v. State</u>, 99 So. 3d 1001, 1003 (Fla. 1st DCA 2012). Defendant argued with the

victim in their driveway, walked inside, picked up a handgun, walked back outside, and shot the victim multiple times. Nothing in the record established a legal justification for these actions. <u>Quintana</u>, 452 So. 2d at 100.

Further, counsel's strategic decision not to call a witness after investigating the witness's testimony is "generally not subject to postconviction attack under <u>Strickland</u>." <u>Mendoza v. State</u>, 81 So. 3d 579, 580-81 (Fla. 3d DCA 2012). After reviewing the witnesses' potential testimony, counsel reasonably determined that their testimony would not help the defense. Accordingly, Defendant is not entitled to relief on Ground One.

. . .

In Ground Two, Defendant alleges counsel was ineffective for failing to investigate and call multiple witnesses. Specifically, Defendant complains that counsel was deficient for not presenting the testimony of witnesses who would have testified as to the victim's behavior when he was either high or drunk. Defendant claims prejudice because there is a reasonable probability the result of his trial would have been different had the jury heard this testimony.

A defendant must specifically allege the following when claiming counsel was ineffective for failing to investigate a witness: (1) the witness's identity; (2) the substance of the witness's expected testimony; (3) how the omission of the witness's testimony prejudiced the defendant; and (4) that the witness was available to testify at trial. <u>E.g.</u> <u>Brown v. State</u>, 962 So. 2d 355, 355-56 (Fla. 1st DCA 2007) (citing <u>Nelson v. State</u>, 875 So. 2d 579, 583 (Fla. 2004)).

In ruling on Ground One, this Court found that counsel investigated these witnesses and correctly determined that they would have provided no relevant, admissible testimony. Accordingly, Defendant is not entitled to relief on Ground Two.

>Mendoza, 81 So. 3d at 581 (quoting Strickland, 466
>U.S. at 690).

Id. at 952-53 (record citations omitted). The First DCA affirmed the denial of

relief without a written opinion. See Doc. 8-2 at 131.

To the extent that the First DCA decided this claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's

adjudication of this claim was not contrary to clearly established federal law,

did not involve an unreasonable application of clearly established federal law,

and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Beamon is not

entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this

claim is not entitled to deference, the claim is too speculative to warrant

federal habeas relief. In the Petition, Beamon neither identifies the proposed

witnesses nor sets forth the substance of the expected testimony that he

contends would have aided his defense. See Shaw v. United States, 729 F.

App'x 757, 759 (11th Cir. 2018) ("[The Eleventh Circuit Court of Appeals has]

stated that complaints about uncalled witnesses are not favored, because the

presentation of testimony involves trial strategy and 'allegations of what a

witness would have testified are largely speculative.'" (quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978))); <u>Streeter v. United States</u>, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." (citing <u>Johnson</u>, 256 F.3d at 1187)). Further, although Beamon maintains that his proposed defense witnesses would have testified favorably, he provides no evidence to support his belief. <u>See</u> <u>United States v. Ashimi</u>, 932 F.2d 643, 650 (7th Cir. 1991) ("Evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").

Ultimately, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995)). Counsel's strategic decisions "are entitled to a 'strong presumption' of reasonableness." <u>Dunn v. Reeves</u>, 141 S.Ct. 2405, 2410 (2021) (quoting <u>Richter</u>, 562 U.S. at 104). Here, the record reflects that after the State rested, the trial court had a lengthy exchange with Beamon and his counsel

regarding two individuals Beamon wanted to call as defense witnesses. See Doc. 8-1 at 487-93. Beamon told the court that he expected both individuals to testify regarding past violence and threats by the victim towards Beamon and their mother. Id. at 488. But counsel explained that even if the individuals testified as Beamon expected, their testimony would not be admissible or relevant to his defense:

> [T]here is no evidence here that would justify a self-defense claim. The witnesses that he has referred to have evidence of prior disputes between the victim and [Defendant], between victim and his mother. Nothing relevant to an actual self-defense claim on the day of the shooting. Therefore, their testimony would not be relevant in this trial and that's what . . . I have explained to him. . . . Even if I called these witnesses I believe the [S]tate would initially object and their testimony would probably have been proffered and Your Honor would not allow it because it's not relevant to the claim at issue here.

Id. at 489. On this record, it was a reasonable trial strategy for counsel to choose not to call the two witnesses. Beamon has failed to show that no competent attorney would have taken the action that his counsel chose. See Goff v. United States, 693 F. App'x 854, 855 (11th Cir. 2017) ("The choice not to call either of them as witnesses was not patently unreasonable that no competent lawyer would have chosen it, and was the epitome of a strategic decision."). Moreover, Beamon has failed to make any showing to suggest a reasonable probability that the outcome would have been different if his

proposed witnesses had been called to testify. As such, Beamon has failed to demonstrate deficient performance or resulting prejudice. Therefore, the claim in Ground Six is due to be denied.

### F. Ground Seven

As Ground Seven, Beamon argues his trial counsel was ineffective for failing to object to the trial testimony of State witness Katie Whitehurst, the mother of both the victim and Beamon. See Petition at 24. Beamon raised a substantially similar claim in ground five of his amended Rule 3.850 Motion. See Doc. 8-1 at 915-16. The postconviction court denied relief on the claim, stating in pertinent part:

> In Ground Five, Defendant alleges counsel was ineffective for failing to object to the testimony of Katie Whitehurst. Specifically, Defendant alleges counsel was deficient for not objecting when Whitehurst became emotional and confused during her testimony. Defendant does not allege how counsel's failure to object prejudiced him, so his claim is insufficient as pled. Smith, 998 So. 2d at 694 (citing Strickland, 466 U.S. at 694).
>
> This Court has broad discretion to manage the courtroom in the event that a witness becomes emotional while testifying. Thomas v. State, 748 So. 2d 970, 980-81 (Fla. 1999) (citations omitted). When Whitehurst struggled during her testimony, this Court stopped the proceedings, had the jury removed from the courtroom, and did not resume the trial until Whitehurst regained her composure. These actions sufficiently calmed the situation.
>
> Defendant also alleges counsel should have objected to Whitehurst's testimony based upon her confusion. However, even had counsel somehow

impeached Whitehurst or emphasized her confusion on the witness stand, both Roberts and Holsey corroborated the substantive portions of her testimony, and Officer Muchowicz testified that Defendant attempted to flee the scene of the shooting by driving over his neighbor's lawns after emergency vehicles blocked the road. In light of the overwhelming evidence of guilt presented by the State, any tangential issues regarding Whitehurst's composure or confusion did not affect the ultimate outcome of Defendant's trial. Hernandez v. State, 180 So. 3d 978, 989-90 (Fla. 2015); see also Mack v. State, 21 So. 3d 105, 106 (Fla. 3d DCA 2009). Accordingly, Defendant is not entitled to relief on Ground Five.

Id. at 957-58 (record citations omitted). The First DCA affirmed the denial of relief without a written opinion. See Doc. 8-2 at 131.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Beamon is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is conclusory and too speculative

to warrant federal habeas relief. In the Petition, Beamon does not identify any specific portion of Whitehurst's testimony to which he believes his counsel should have objected. See Petition at 24. And although Beamon alleges that Whitehurst made a "bias[ed] statement," he does not identify the statement. Id.

The Court notes that in his amended Rule 3.850 Motion, Beamon argued the exchange quoted below from Whitehurst's testimony showed bias:

> Q: Where did you follow [Beamon]?
>
> A: All the way past the two cars in the driveway to the gate. When I got to the gate he already had pointed the gun and shot him three times. My baby fell in the ditch and knocked his shoes off and when the people got there to pick him up they throwed him up there on the stretcher like he was a piece of dead meat.

See Doc. 8-1 at 447-48; see id. at 916 (asserting that Whitehurst made a biased statement when she said "they throw my baby"). Whether this specific testimony was inadmissible is a matter of state evidentiary rules and does not rise to the level of a federal constitutional violation. As such, Beamon has not established deficient performance. Further, Beamon has not demonstrated a reasonable probability that "the result of the proceeding would have been different" if his counsel had objected to the above testimony. Richter, 562 U.S. at 104. Accordingly, Beamon is not entitled to federal habeas relief on the claim raised in Ground Seven.

## G. Ground Eight

As Ground Eight, Beamon argues that his trial counsel was ineffective for failing to prepare him for trial. See Petition at 24. He appears to contend that counsel did not have sufficient time to investigate and prepare for trial because counsel assumed representation "only two or three months" before the trial date. Id.

Beamon raised a substantially similar claim in his amended Rule 3.850 Motion. See Doc. 8-1 at 919. The postconviction court denied relief on the claim, stating in pertinent part:

> In Ground Seven, Defendant alleges counsel was ineffective for failing to properly prepare Defendant for trial. Specifically, Defendant complains that counsel only had two to four months to prepare for trial. Defendant claims prejudice because counsel did not have time to investigate a defense.
>
> Standing alone, allegations that counsel did not have time to adequately prepare for trial are insufficient to state a claim for postconviction relief. State v. Barton, 194 So. 2d 241, 246 (Fla. 1967). A defendant must specifically allege how the lack of time led counsel to perform deficiently and how this deficiency ultimately prejudiced the defendant. Id. Citing Harris v. Cotton, 365 F.3d 552 (7th Cir. 2004), Defendant alleges time constraints led his attorney to ignore information Defendant provided her about the victim. However, Harris involved a specific allegation of deficiency and a specific allegation of prejudice. Id. at 556-57. In that case, the defendant alleged his attorney had failed to obtain a coroner's report showing the victim had been under the influence of alcohol and cocaine at the time of his death, and, but for counsel's failure to obtain that report, the jury

> would have heard medical evidence supporting the defendant's claim that the victim had been irrationally aggressive just before the shooting. Id.
>
> In the instant Motions, Defendant fails to make such an allegation, claiming only that he told counsel the victim would become belligerent and aggressive when intoxicated. He does not point to any specific evidence counsel failed to raise or any defense precluded by the period of time between counsel coming onto the case and the beginning of trial. Defendant alleges counsel's lack of time "eliminated" potential witnesses for the defense, but he in no way alleges who those witnesses were or what their testimony would have been. Accordingly, this claim is insufficient as pled and Defendant is not entitled to relief. Pelham, 737 So. 2d at 573. Further, this Court has already found that counsel did not err by choosing not to argue self-defense.

Id. at 960-62. The First DCA affirmed the denial of relief without a written opinion. See Doc. 8-2 at 131.

To the extent that the First DCA decided this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Beamon is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. There is a strong presumption in favor of an attorney's competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

Here, Beamon does not identify what, if any, shortcomings existed in his trial counsel's preparation for trial. Nor does he assert how his counsel's representation would have been different if counsel had more time to prepare

for trial. Beamon's conclusory claim is insufficient and fails to demonstrate that counsel acted outside the range of reasonable professional assistance. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Accordingly, Beamon is not entitled to federal habeas relief on the claim raised in Ground Eight.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Beamon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Beamon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Beamon appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that

may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 27th day of March, 2024.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10  2/29
C:      Floyd Beamon, #J40455
        Counsel of record